U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2024 APR 26  AM 9: 24

CLERK

BY _____*[signature]*_____
DEPUTY CLERK

AMY CONNELLY,                                      )
                                                   )
Plaintiff,                                         )
                                                   )
        v.                                         )        Case No. 2:21-cv-00291
                                                   )
CITY OF ST. ALBANS, VERMONT;                       )
GARY TAYLOR, individually and in his               )
official capacity as Chief of Police for the City  )
of St. Albans, Vermont; JASON LAWTON,              )
individually and in his official capacity as a     )
police officer for the City of St. Albans,         )
Vermont; and ZACHARY KOCH,                         )
individually and in his official capacity as a     )
police officer for the City of St. Albans,         )
Vermont,                                           )
                                                   )
Defendants.                                        )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT ZACHARY KOCH'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 64)

        Plaintiff Amy Connelly brings this action against the City of St. Albans, Vermont

(the "City"); Gary Taylor, individually and in his official capacity as the City's Chief of

Police ("Chief Taylor"); and Jason Lawton ("Sergeant Lawton") and Zachary Koch

("Officer Koch"), individually and in their official capacities as police officers for the

City (collectively, "Defendants").

        Plaintiff asserts the following claims against Officer Koch arising from a physical

altercation that occurred on March 14, 2019 while she was detained at the City of St.

Albans Police Department: violation of her Fourth and Fourteenth Amendment rights

against excessive force and failure to intervene to prevent the violation of these rights

under 42 U.S.C. § 1983 (Count I), as well as state law claims of assault (Count II),

battery (Count III), intentional infliction of emotional distress ("IIED") (Count IV), and gross negligence (Count V).

On August 15, 2023, Officer Koch moved for summary judgment. (Doc. 64.) Plaintiff opposed the motion on September 29, 2023, (Doc. 74), and Officer Koch replied on October 13, 2023, (Doc. 81), at which point the court took the pending motion under advisement.

Plaintiff is represented by Evan B. Chadwick, Esq. Officer Koch is represented by Kevin L. Kite, Esq.

## I.    Undisputed Facts.

The City is a municipality that owns, operates, manages, directs, and controls the St. Albans Police Department (the "SAPD"). At all relevant times, Sergeant Lawton and Officer Koch were officers of the SAPD, and Chief Taylor was the chief of police of the SAPD. Officer Koch joined the SAPD in October 2018.

The following events were captured on three mounted video cameras in and near the SAPD holding cell and on Sergeant Lawton's and Officer Koch's body cameras.[1] The parties agree the videos are fair and accurate depictions of the events recorded therein, even if they conflict with the participants' recollections.[2]

On the evening of March 14, 2019, Sergeant Lawton, Officer Koch, and Officer Michael Ferguson ("Officer Ferguson") were on duty, and Sergeant Lawton was the supervising officer. At approximately 7:55 p.m., Officer Koch received a dispatch call regarding a disturbance at a bar in St. Albans. Dispatch reported, "I have a female that just assaulted an employee there. She is still inside." (Doc. 64-2 at 9, ¶ 37) (internal

---

[1] The body cameras do not accurately reflect date and time and show times approximately four hours and thirty minutes later than when the recorded events took place.

[2] Where there is an unaltered video recording of an incident, the court may "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007); *see also MacLeod v. Town of Brattleboro*, 2012 WL 5949787, at *7 (D. Vt. Nov. 28, 2012), *aff'd*, 548 F. App'x 6 (2d Cir. 2013) ("In assessing whether there are triable issues of fact, the court may rely on facts as depicted in an unaltered videotape and audio recording, even when such facts contradict those claimed by the nonmoving party.").

quotation marks omitted). Dispatch further stated that the woman was wearing a red shirt and would "be sitting at the bar refusing to leave." *Id.* at ¶ 38 (internal quotation marks omitted).

Officer Koch responded and found Plaintiff intoxicated and at the bar. He handcuffed her, informed her she was being detained pending an investigation, and began to question her. Sergeant Lawton and Officer Ferguson arrived at the bar and interviewed its owner, whose shirt was ripped. Office Koch asked Plaintiff what happened, and she told him the bar's owner touched her behind and said, "I own this[.]" *Id.* at 10, ¶ 40 (internal quotation marks omitted). Officer Koch escorted Plaintiff to his vehicle and informed her she was under arrest for unlawful trespass because she had been asked to leave the bar and had refused to do so and potentially for assault or other charges based on the other officers' investigation. Plaintiff declined to provide a breath sample.

Officer Koch drove Plaintiff to the SAPD station. When he opened the right-side passenger door and unbuckled Plaintiff's seatbelt, Plaintiff stated, "You're hurting me." *Id.* at ¶ 42 (internal quotation marks omitted). Officer Koch responded, "How am I hurting you? I'm not even touching you." *Id.* (internal quotation marks omitted). Officer Koch stepped back from the door and Plaintiff asked, "How do you think you're hurting me?" *Id.* (internal quotation marks omitted). She had trouble getting out of the cruiser because her hands were secured behind her back, and she said, "Help me, help me[.]" (Doc. 64-2 at 10, ¶ 42) (internal quotation marks omitted). Officer Koch helped her out and directed her to proceed up the steps to the station. Plaintiff replied, "No. Don't touch me like that." *Id.* (internal quotation marks omitted).

Officer Koch placed his right hand on Plaintiff's arm, told her she was on video, and again directed her to go up the stairs. Plaintiff responded, "Don't touch me like that because when you do, I'm going to let your fellow officers know you're hurting me." *Id.* (internal quotation marks omitted). She pulled her arm out of Officer Koch's hand and refused to walk up the stairs. Officer Koch again instructed her to proceed up the stairs. In response, she asked him, "[I]s this what you want to do[?]" *Id.* at 11, ¶ 42 (internal quotation marks omitted). Officer Koch requested dispatch note that Plaintiff was being

3

"combative[,]" *id.* (internal quotation marks omitted), and again attempted to take Plaintiff's arm and escort her up the stairs. Plaintiff commented, "No, I am not being combative. You're being harrasive." *Id.* (internal quotation marks omitted).

As Officer Koch and Plaintiff entered the SAPD station, Plaintiff said, "Ow, I'm going to let them know . . . ." (Doc. 64-2 at 11, ¶ 42) (internal quotation marks omitted). Officer Koch asked dispatch to note Plaintiff was refusing directions. As Officer Koch escorted Plaintiff to a holding cell, she repeatedly told him, "You're hurting me." *Id.* (internal quotation marks omitted). After Officer Koch closed the door to the holding cell with Plaintiff handcuffed inside, he informed dispatch that Plaintiff had refused a breath test. Officer Koch then went to the dispatch room, which was out of sight and sound from the holding cell.

Approximately two minutes later, Sergeant Lawton and Officer Ferguson returned to the SAPD station and walked past the holding cell. Soon thereafter, Plaintiff began kicking the holding cell's door. Sergeant Lawton heard the disturbance from the officers' room, walked to the holding cell, and activated his body camera. Sergeant Lawton opened the door and found Plaintiff sobbing. He told her to stop kicking the door. Two seconds after Sergeant Lawton opened the holding cell's door, Officer Koch approached the holding cell carrying a piece of paper, placed it on the counter of the processing room, and walked away.

Plaintiff continued to cry as she stood up. At the time, Officer Koch was outside the frame of the mounted cameras. Sergeant Lawton instructed Plaintiff to sit down. She refused and took a step towards him. Sergeant Lawton shoved Plaintiff backwards onto the bench in the holding cell, saying, "Don't come at me like that." *Id.* at 15, ¶ 60. Plaintiff responded, "How fucking dare you?" *Id.* at ¶ 61 (internal quotation marks omitted). Officer Koch returned to the area outside the holding cell and stood in the hallway behind Sergeant Lawton. Approximately four seconds elapsed between Officer Koch's exit and his reentry into the camera frame. Sergeant Lawton told Plaintiff, "Listen to me real good." *Id.* at ¶ 63 (internal quotation marks omitted). Plaintiff looked at Officer Koch and said, "He has hurt me." *Id.* at ¶ 64 (internal quotation marks omitted).

4

Sergeant Lawton told her to "[s]hut up[,]" (Doc. 64-2 at 15, ¶ 65) (internal quotation marks omitted). Plaintiff stood up and kicked him in the shin. Officer Koch saw the kick but not where it landed. He believed Plaintiff's conduct constituted an assault on a law enforcement officer.

Less than three seconds later, Sergeant Lawton pushed Plaintiff back with his right hand, grabbed her shoulder with his left hand, and punched her in the face with his right hand. Officer Koch watched this happen but did not see where the punch landed because it was obscured by Sergeant Lawton's body. As Sergeant Lawton stepped forward to punch Plaintiff, he let go of the holding cell's door, which began to close until Officer Koch grabbed it and entered the holding cell. By that time, the punch was completed. Officer Koch did not anticipate that Sergeant Lawton would punch Plaintiff in the face. He does not believe he had sufficient time to respond to the punch.

After punching Plaintiff, Sergeant Lawton grabbed her neck with his left hand and her right arm with his right hand. He turned Plaintiff towards the holding cell door and said, "You fucking kick me . . . ." *Id.* at 19-20, ¶ 79 (internal quotation marks omitted). As this occurred, Officer Koch stepped back from Sergeant Lawton and Plaintiff. Sergeant Lawton pushed Plaintiff out of the holding cell into the hallway. As Sergeant Lawton pushed Plaintiff, Officer Koch backed out of the cell, stooped down, and reached towards Plaintiff's arms, making contact with Plaintiff. Plaintiff fell onto the floor and hit her head. She cannot remember Officer Koch's precise role in bringing her to the ground other than that he was present and made contact with her arm. Approximately ten seconds elapsed between Officer Koch's arrival at the holding cell door and Plaintiff's hitting the floor.

Thereafter, Officer Ferguson arrived at the holding cell door. He and Sergeant Lawton held Plaintiff to the ground while Officer Koch obtained shackles to secure Plaintiff's legs to the back of the holding cell. Sergeant Lawton and Officer Ferguson lifted Plaintiff into a kneeling position, and someone called for medical assistance. Ten minutes later, two EMS personnel arrived and examined Plaintiff before taking her by

5

ambulance to the hospital where she was diagnosed with "[c]ontusion of eyeball and orbital tissues, right eye[.]" (Doc. 61-2 at 3, ¶ 13.)

## II.    Disputed Facts.

Officer Koch asserts he was not aware of the events leading up to Sergeant Lawton's physical contact with Plaintiff and was not present when the shove occurred. Plaintiff contends there is a disputed question of material fact regarding what Officer Koch knew, saw, and heard at the time.

Officer Koch alleges he tried to hold onto Plaintiff's arms as she was falling to break her fall after Sergeant Lawton pushed her out of the holding cell, but she slipped through his grasp. He testified that he does not recall putting pressure on Plaintiff's arm and that his grip was "loose[.]" (Doc. 64-2 at 23, ¶ 87) (internal quotation marks omitted). Plaintiff, however, asserts that Officer Koch applied downward pressure with his left hand and assisted Sergeant Lawton in forcing her to the ground. Plaintiff claims this conduct resulted in a concussion and post-concussive syndrome.

## III.   Conclusions of Law and Analysis.

### A.    Standard of Review.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that "'might affect the outcome of the suit under the governing law[,]'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), while "[a] dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). On a motion for summary judgment, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his [or her] favor." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

6

477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

"On a motion for summary judgment, a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson*, 477 U.S. at 248). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "[T]he substantive law will identify which facts are material." *Id.*

In adjudicating a motion for summary judgment, the district court's role "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). If the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court should deny summary judgment. *Anderson*, 477 U.S. at 251-52.

**B.    Whether the Genuinely Disputed Facts Preclude Summary Judgment.**

Officer Koch points out Plaintiff's memory was impaired by her intoxication at the time of the event, and therefore the court should focus exclusively on the videos which support his version of the facts. The videos, however, even examined frame by frame do not clearly depict the takedown because of the positioning of the participants' bodies. The court therefore cannot find as a matter of fact or law that Officer Koch had no role, other than a protective one, in the takedown. Because the videos are inconclusive regarding

7

what Officer Koch saw and heard and whether he applied downward pressure on Plaintiff when she was taken to the ground, the credibility of Officer Koch's testimony regarding his lack of involvement remains a question of fact for the jury. *See O'Toole ex rel. Est. of Fratto v. Cnty. of Orange*, 2019 WL 1099721, at *13 (S.D.N.Y. Mar. 8, 2019) ("[I]t is not the [c]ourt's province to interpret the video—instead the [c]ourt suffices to say that the evidence raises factual issues that are clearly disputed."); *Cuello v. Target Corp.*, 2023 WL 4763234, at *6 (S.D.N.Y. July 26, 2023) (concluding genuine dispute existed where court was "unprepared to conclusively find that the video [was] incapable of reliable deconstruction by a jury on the point at issue[]").

## C.    Whether Officer Koch Is Entitled to Summary Judgment on Plaintiff's Excessive Force Claims Brought Under 42 U.S.C. § 1983 (Count I).

42 U.S.C. § 1983 "is not itself a source of substantive rights" but provides "a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A claimant must establish the person who committed the violation was acting "under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (internal quotation marks omitted) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). He or she also "must p[rove] that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676) (alteration in original).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "When a defendant moves for summary judgment based on qualified immunity, courts consider whether the facts shown make out a violation of a constitutional right, and whether the right at issue was clearly

8

established at the time of [the] defendant's alleged misconduct." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (internal quotation marks and citation omitted). For excessive force claims, the court applies the "same" standard of "objective reasonableness" to the merits of a Fourth Amendment claim and to a qualified immunity claim. *Collado v. City of N.Y.*, 396 F. Supp. 3d 265, 274 n.11 (S.D.N.Y. 2019); *see also O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) ("[I]n Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits.") (internal quotation marks and citation omitted).

A police officer's conduct violates "clearly established law" only when it is clear that "every reasonable official would have understood that what he is doing violates that right." *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012) (internal quotation marks omitted). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 367 (2d Cir. 2021), *cert. denied*, 143 S. Ct. 438 (2022) (mem.) (internal quotation marks omitted) (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004)).

"In analyzing whether [the] right [against unreasonable seizures] has been violated, courts must be careful not to define clearly established law at a high level of generality, because the dispositive question for the purpose of qualified immunity is whether the violative nature of *particular* conduct is clearly established[.]" *McKinney*, 49 F.4th at 739 (alteration adopted) (internal quotation marks and citation omitted). "[S]pecificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks and citation omitted); *see also City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015) ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.").

9

Although a case "directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and citations omitted). Because objective reasonableness is a fact-specific inquiry, a police officer is "'entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.'" *McKinney*, 49 F.4th at 738 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018)).

Whether a defendant's conduct is objectively reasonable for qualified immunity purposes "is always a question of law for the court." *Gonzales v. Duran*, 590 F.3d 855, 864 (10th Cir. 2009); *see also Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (observing that if there are no "disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court"). Where there are disputed issues of material fact, a determination of qualified immunity is often inappropriate at the summary judgment stage. *See Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").

### 1.  Whether Officer Koch Is Entitled to Summary Judgment on Plaintiff's Direct Liability Theory.

Officer Koch argues that Plaintiff's excessive force claims are based upon: (1) Sergeant Lawton shoving her; (2) Sergeant Lawton punching her in the face; and (3) Sergeant Lawton taking her down to the ground. He contends that it is undisputed he did not touch Plaintiff during the first two instances therefore he is entitled to summary judgment on those claims. The court agrees. Because Officer Koch did not physically take part in Sergeant Lawton's shoving Plaintiff or the punch to Plaintiff's face, his lack of personal involvement prevents him from being held directly liable for excessive force for those actions. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation

10

marks omitted). The court therefore GRANTS Officer Koch's motion for summary judgment with regard to these acts.

Regarding the takedown, Officer Koch argues there is no evidence he aided Sergeant Lawton in applying force and video evidence supports his contention that he attempted to slow Plaintiff's fall. He further asserts his attempt to grab Plaintiff's arm was reasonable under the circumstances because she appeared to be resisting and because she would likely get injured otherwise. He contends there is no controlling precedent sufficiently similar to the facts of this case to place a reasonable officer on notice of a constitutional violation.

Plaintiff counters that there is a genuine dispute regarding whether Officer Koch attempted to slow her fall or aided Sergeant Lawton in forcing her to the ground. She argues the force with which she was thrown to the ground was excessive because she was arrested for a misdemeanor, she was handcuffed, and there was no risk of her escaping. She contends Officer Koch was on notice this conduct violated the Fourth Amendment.

The Fourth Amendment governs "a claim for excessive force after [the plaintiff] has been arrested and detained, but 'prior to the time when [the plaintiff] is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer.'" *Cugini v. City of N.Y.*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989)). "To establish a claim of excessive force, a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standards." *Davis v. Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) (internal quotation marks and citation omitted). This fact-specific inquiry "requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

Factors to consider, at minimum, include: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* "Though the Second Circuit has not yet ruled on

11

the issue, many courts have viewed the 'immediate threat to the safety of the officers or others' as the most important . . . factor." *Ramos v. Town of E. Hartford*, 2019 WL 2785594, at *7 (D. Conn. July 2, 2019) (quoting *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016)).

"A plaintiff must also demonstrate that the officer was made reasonably aware that the force used was excessive." *Cugini*, 941 F.3d at 612. Reasonableness of the use of force must be judged "from the perspective of a reasonable officer on the scene[]" and "allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

Under Vermont law, unlawful trespass, a misdemeanor, is "not a particularly severe crime." *Linton v. Zorn*, 2022 WL 17080324, at *10 (D. Vt. Oct. 19, 2022) (internal quotation marks omitted). Although Plaintiff was under investigation for a potential assault at the bar as well, a significant period of time elapsed between that conduct and the takedown. *See Bryant v. Meriden Police Dep't*, 2017 WL 1217090, at *8 (D. Conn. Mar. 31, 2017) ("The seriousness of the suspected crime as a proxy for the need to use force becomes less helpful as more time passes between the initial interaction and the use of force.") (citing *Hemphill v. Schott*, 141 F.3d 412, 417 (2d Cir. 1998)). Plaintiff's kicking of Sergeant Lawton was a more serious offense and likely constituted an assault on a law enforcement officer *See* 13 V.S.A. § 1028(a) (providing additional penalties for "[a] person convicted of simple or aggravated assault against a protected professional[, including a law enforcement officer,] . . . while the protected professional is performing a lawful duty, or with the intent to prevent the protecting professional from performing his or her lawful duty[]"). She was also combative and non-compliant with law enforcement directives.

Although Plaintiff was not resisting arrest or attempting to evade arrest, her refusal to cooperate and potential threat to officers arguably justified some use of force to obtain her compliance. *See Bettis v. Bean*, 2015 WL 5725625, at *11 n.14 (D. Vt. Sept. 29,

2015) ("[C]ourts recognize that the refusal to comply with lawful police commands may, itself, render the use of force reasonable to achieve compliance."). Likewise, "[t]he fact that a person . . . assaults the officer no doubt justifies the officer's use of some degree of force, but . . . [t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) (per curiam) (alteration in original). At the time, however, Plaintiff was handcuffed behind her back and inside a small holding cell. Undoubtedly, this reduced the risk to officer safety. *See Bryant*, 2017 WL 1217090, at *12 (considering fact that plaintiff was unarmed, detained in holding cell, in presence of multiple officers, and only passively resisting strip search when concluding "[i]t was not reasonable to believe that [plaintiff] posed a threat to officer safety[]").

Viewed collectively and not in isolation, in the light most favorable to Plaintiff, a reasonable jury could find, once Officer Koch knew Sergeant Lawton had shoved and punched Plaintiff and she was claiming to be hurt, he nonetheless participated in her takedown in violation of the Fourth Amendment. *See Lemmo v. McKoy*, 2011 WL 843974, at *7 (E.D.N.Y. Mar. 8, 2011) (denying defendant's motion for summary judgment on excessive force claim where plaintiff was handcuffed and secured inside cell after resisting and officer re-opened door to use force against plaintiff in response to verbal taunts and threats).[3]

"[I]n April 2015, it was clearly established in [the Second] Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an

---

[3] *See also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) (concluding summary judgment was inappropriate where pepper spray was applied after plaintiff "had already been handcuffed and was offering no physical resistance"); *Smith v. Conway Cnty.*, 759 F.3d 853, 860 (8th Cir. 2014) (concluding that, even assuming first use of taser was justified to subdue the plaintiff who allegedly intentionally kicked an officer, second use of taser would be unreasonable if it occurred after the plaintiff was no longer resisting or posing a threat); *Ramos v. Town of E. Hartford*, 2019 WL 2785594, at *10 (D. Conn. July 2, 2019) (denying defendant's request for summary judgment where reasonable jury could conclude plaintiff was no longer resisting or posing a threat to law enforcement when punch and push occurred).

arrestee who is no longer resisting and poses no threat to the safety of officers or others." *Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020) (citing *Tracy*, 623 F.3d at 98-99). Although the type of force used is relevant to assessing whether it was excessive, controlling precedent need not address the "precise method of excessive force used[.]" *Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020).

In *Maxwell v. City of New York*, 380 F.3d 106 (2d Cir. 2004), a responding police officer arrested and handcuffed the plaintiff for allegedly assaulting a bouncer at a bar. While the plaintiff was handcuffed, the officer "shoved her head first into his police car, causing her to strike the metal partition between the front and back seats[,]" resulting in a concussion and post-concussive syndrome. *Id.* at 108. The Second Circuit concluded "a jury should assess [the plaintiff's] account of what occurred during her arrest, along with any conflicting evidence the [defendants] present." *Id.* at 109-10.

Officer Koch argues this case is distinguishable from *Maxwell* because there is video evidence and because Sergeant Lawton, rather than Officer Koch, decided to bring Plaintiff to the floor with the degree of force that allegedly caused her injuries. A disputed issue of material fact, however, remains regarding whether Office Koch tried to prevent Plaintiff's fall or assisted in the takedown.[4] For this reason, judgment as a matter of law with regard to the takedown portion of Plaintiff's excessive force claim, on either lack of personal involvement or qualified immunity grounds, must await a jury's determination of the facts.

For the reasons set forth above, Officer Koch's motion for summary judgment on Plaintiff's excessive force claim is GRANTED IN PART AND DENIED IN PART.

---

[4] *See Fairchild v. Coryell Cnty.*, 40 F.4th 359, 365 (5th Cir. 2022) (concluding "factual dispute about whether the jailers threw [the plaintiff] to the floor or she fell determines whether they responded reasonably to the low security threat" of the plaintiff tapping her hairbrush against cell door); *Rivera v. Madan*, 2013 WL 4860116, at \*9 (S.D.N.Y. Sept. 12, 2013) (concluding qualified immunity claim required resolution of disputed issues of fact precluded summary judgment where the plaintiff resisted officers but "was unarmed and was in handcuffs, leg restraints, and a waist restraint" and accused the defendant officer of "shov[ing] him violently into [a] wall and then pick[ing] him up and slam[ming] his head into the floor[]").

14

### 2.    Whether Officer Koch Is Entitled to Summary Judgment on Plaintiff's Failure to Intervene Theory.

Officer Koch argues he was not present when Sergeant Lawton shoved Plaintiff and therefore could not have intervened to prevent it. Similarly, he contends he was standing behind Sergeant Lawton when Sergeant Lawton punched Plaintiff so that there was no opportunity to intervene. He also claims he could not prevent Sergeant Lawton from taking Plaintiff to the ground as evidenced by his failed attempt to intervene.

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill*, 839 F.2d at 11). However, "[i]n order for liability [for failure to intervene] to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Even where a law enforcement officer does not have the opportunity to intervene at the outset, "[h]aving seen the victim beaten, he [or she] [is] alerted to the need to protect [the victim] from further abuse." *O'Neill*, 839 F.2d at 12.

"[W]hether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." *Figueroa*, 825 F.3d at 107. "Among these considerations, of course, the assault's duration will always be relevant and will frequently assume great importance." *Id.* (citation omitted). The question of whether there was "a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Sloley v. VanBramer*, 945 F.3d 30, 47 (2d Cir. 2019) (quoting *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014)).

> A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person

> would have known. Further, the failure to intercede must be under
> circumstances making it objectively unreasonable for him to believe that
> his fellow officers' conduct did not violate those rights.

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (internal quotation marks and citations omitted).

Officer Koch was not present when Sergeant Lawton shoved Plaintiff back into the holding cell. Accordingly, no reasonable juror could conclude that he had an opportunity to intervene in that alleged constitutional violation.[5]

Although Officer Koch was standing behind Sergeant Lawton when Plaintiff was punched in the face and the punch took place in a matter of seconds, Sergeant Lawton provided no verbal warning. The punch was completed before Officer Koch stepped into the holding cell. Even if he could have entered the holding cell sooner as the door began to close, there is no evidence he could have come between Sergeant Lawton and Plaintiff in time to prevent the punch. Based on these undisputed facts and the video evidence, no reasonable juror could conclude that Officer Koch had an opportunity to intervene in Sergeant Lawton's split-second decision to punch Plaintiff in the face with a closed fist. *See Raffaele v. City of N.Y.*, 242 F. Supp. 3d 152, 158 (E.D.N.Y. 2017) (granting summary judgment on failure to intervene claim where officers were six-to-ten feet away from the plaintiff when fellow officer suddenly pushed and hit the plaintiff within three-second span). The court therefore GRANTS summary judgment in Officer Koch's favor on Plaintiff's failure to intervene claim insofar as it pertains to Sergeant Lawton's shove and punch.

Plaintiff's failure to intervene claim with regard to the takedown warrants a different conclusion. For that event, Officer Koch was present and either tried to prevent

---

[5] *See O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (determining defendant did not fail to intervene where "[t]he three blows were struck in such rapid succession that [defendant] had no realistic opportunity to attempt to prevent them"); *Baker v. Jiminian*, 2020 WL 3172700, at \*5 (S.D.N.Y. June 15, 2020) (finding no liability for failure to intervene because the use of force occurred "in mere seconds"); *Gonzalez v. Waterbury Police Dep't*, 199 F. Supp. 3d 616, 623 (D. Conn. 2016) (observing that "[o]ften it is impossible for an officer to have a reasonable opportunity to intervene if the alleged use of force was quick and isolated") (collecting cases).

Sergeant Lawton's takedown or assisted in it. Because the facts are disputed, a jury must decide this issue before the court determines whether qualified immunity is available.[6]

For the reasons stated above, the court GRANTS IN PART AND DENIES IN PART Officer Koch's motion for summary judgment on Plaintiff's failure to intervene claim.

### D.    Whether Officer Koch Is Entitled to Summary Judgment on Plaintiff's State Law Claims.

Officer Koch argues Plaintiff cannot establish an essential element of her intentional tort claims because his contact with Plaintiff during the takedown was reasonable and therefore privileged. Officer Koch also asserts he is entitled to qualified immunity under Vermont law for Plaintiff's tort claims of assault, battery, IIED, and gross negligence.

Under Vermont law, qualified immunity "attaches to public officials who are (1) acting during the course of their employment and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts." *Baptie v. Bruno*, 2013 VT 117, ¶ 11, 195 Vt. 308, 314, 88 A.3d 1212, 1216 (internal quotation marks omitted). The "doctrine's purpose [is] to protect officials from exposure to personal tort liability that could (1) hamper their ability to effectively discharge their duties and (2) subject their discretionary determinations to review by a judicial system ill-suited to assess the full scope of factors involved in such determinations." *Nelson v. Town of St. Johnsbury Selectboard*, 2015 VT 5, ¶ 63, 198 Vt. 277, 303, 115 A.3d 423, 441 (internal quotation marks omitted).

---

[6] *See Benny v. City of Long Beach*, 2023 WL 8642853, at *2 (2d Cir. Dec. 14, 2023) (summary order) (concluding summary judgment on failure to intervene claim based on qualified immunity was inappropriate where "a question of material fact exists as to whether the force used was excessive and whether [the officer] failed to intervene[]"); *Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016) (concluding failure to intervene claim should be decided by a jury for an assault that lasted less than twenty seconds because, in "the apparent absence of any obstacles that may have hindered their ability to intercede," the court could not "hold that the assault occurred so quickly that the defendant officers lacked time to intercede as a matter of law[]").

The Vermont Supreme Court "has adopted the federal standard for good faith, which hinges upon the objective reasonableness of the official's conduct." *Civetti v. Turner*, 2022 VT 64, ¶ 9, 296 A.3d 132, 136 (internal quotation marks and citation omitted). Good faith exists "[i]f the official's conduct does not violate clearly-established rights of which a reasonable person would have known[.]" *Amy's Enters. v. Sorrell*, 817 A.2d 612, 617 (Vt. 2002). When considering objective reasonableness, "'clearly established law' is not limited to federal constitutional and statutory rights, but may include Vermont statutes, regulations[,] and common law." *Sabia v. Neville*, 687 A.2d 469, 521 (Vt. 1996)

"[A] lack of good faith is not established by asserting that the right to be free from the torts alleged in [a] plaintiff's complaint is clearly established." *Murray v. White*, 587 A.2d 975, 980 (Vt. 1991). "Rather, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [In] the light of pre-existing law[,] the unlawfulness must be apparent." *Id.* (alterations and omission in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While "the right involved [in a qualified immunity analysis] must be specific to the circumstances[,]" *Cook v. Nelson*, 712 A.2d 382, 386 (Vt. 1998), "the very action in question [need not] ha[ve] previously been held unlawful[.]" *Anderson*, 483 U.S. at 640. "[The Vermont Supreme Court] do[es] not require that an official demonstrate that he did not violate clearly established federal rights; [Vermont] precedent places that burden upon plaintiffs." *Sprague v. Nally*, 2005 VT 85, ¶ 4 n.3, 178 Vt. 222, 225 n.3, 882 A.2d 1164, 1167 n.3.

The treatment of Plaintiff's state law claims on summary judgment depends upon the nature of Officer Koch's personal involvement, if any, in the alleged constitutional violations.

### 1. Whether Officer Koch Is Entitled to Summary Judgment on Plaintiff's Assault Claim (Counts II).

For a tort claim alleging an assault, a plaintiff must establish a "gesture or threat of violence exhibiting an intention to assault, with the means of carrying that threat into

18

effect . . . unless immediate contact is impossible." *Bishop v. Ranney*, 7 A. 820, 820-21 (Vt. 1887) (internal quotation marks omitted). An assault "creates a reasonable apprehension of immediate physical injury to a human being[,]" *id.* at 821 (internal quotation marks and citation omitted), "[i]f the party threatening the assault has the ability, means, and apparent intention, to carry his threat into execution[.]" *Wilson v. Smith*, 477 A.2d 964, 965 (Vt. 1984) (alteration and internal quotation marks omitted) (quoting *Clark v. Downing*, 55 Vt. 259, 262 (1882)).

"[U]nder Vermont law, public officials are privileged to use such force as is reasonably necessary to accomplish a lawful purpose." *Robison v. Via*, 821 F.2d 913, 927 (2d Cir. 1987) (citing *Chase v. Watson*, 56 A. 10, 11 (Vt. 1903)). A police officer's privilege to use force, however, "ends when the force used is excessive, which is determined using the same standards used to analyze a Fourth Amendment excessive force claim." *Burwell v. Peyton*, 131 F. Supp. 3d 268, 299 (D. Vt. 2015), *on reconsideration in part*, 2015 WL 6874250 (D. Vt. Nov. 9, 2015), *and aff'd sub nom.*, *Burwell v. Moody*, 670 F. App'x 734 (2d Cir. 2016) (internal quotation marks and citation omitted).

Officer Koch was not in proximity to the holding cell when Sergeant Lawton shoved Plaintiff. After he arrived, he was standing behind Sergeant Lawton when Sergeant Lawton punched Plaintiff in the face. Similar to Plaintiff's failure to intervene claim, no reasonable jury could conclude that he participated in an assault of Plaintiff based on these alleged excessive uses of force. *See* Restatement (Second) of Torts § 29 cmt. a (1965) (explaining assault in torts is "an altogether anomalous right of civil action to one *who realized* that an attempt was being made to commit a battery upon him[] [or her]") (emphasis supplied). Plaintiff likewise points to no evidence that she had a reasonable apprehension that Officer Koch was about to cause her physical injury at either point in time. The court therefore GRANTS Officer Koch's motion for summary judgment regarding Plaintiff's assault claim insofar as it pertains to Sergeant Lawton's shove and punch. The court DENIES summary judgment with regard to the takedown until a jury determines Officer Koch's role, if any, in that alleged use of excessive force.

### 2.   Whether Officer Koch Is Entitled to Summary Judgment on Plaintiff's Battery Claim (Count III).

Battery is "an intentional act that results in harmful contact with another." *Christman v. Davis*, 2005 VT 119, ¶ 6, 179 Vt. 99, 101, 889 A.2d 746, 749 (citing Restatement (Second) of Torts § 13 (1965)). Officer Koch neither shoved nor punched Plaintiff nor participated in any way in these acts by a fellow officer. "To make the actor liable for a battery, the harmful bodily contact must be caused by an act done by the person whose liability is in question." *Godin v. Corr. Corp. of Am.*, 2017 Vt. Super. LEXIS 86, at *57 (Vt. Super. Ct. Aug. 25, 2017) (quoting Restatement (Second) of Torts § 14 (1965)). The court thus GRANTS Officer Koch's motion for summary judgment regarding Plaintiff's battery claim insofar as it arises from Sergeant Lawton's shove and punch.

Viewing the disputed facts in the light most favorable to Plaintiff, Officer Koch made contact with Plaintiff during a takedown that caused her head to hit the floor. To the extent Officer Koch asserts his contact with Plaintiff was privileged, or that he is entitled to qualified immunity, disputed material facts must first be decided by a jury. *See Burwell*, 131 F. Supp. 3d at 299 (denying motion for summary judgment on battery claim because court could not conclude whether actions were objectively reasonable as a matter of law). The court thus DENIES Officer Koch's motion for summary judgment with regard to Plaintiff's battery claim to the extent it pertains to the takedown of Plaintiff.

### 3.   Whether Officer Koch Is Entitled to Summary Judgment on Plaintiff's IIED Claim (Count IV).

"To sustain a claim for IIED [under Vermont law] [the] plaintiff must show [the] defendants engaged in outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395, 399, 848 A.2d 344, 347 (internal quotation marks and citation omitted). "[The] [p]laintiff's burden on this claim is a 'heavy one' as he [or she] must show [the] defendants' conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in

20

a civilized community and be regarded as atrocious and utterly intolerable." *Id.* (internal quotation marks omitted).

"The test is objective; the plaintiff must show that the harm resulting from the inflicted distress was so severe that no reasonable person could be expected to endure it." *Farnum v. Brattleboro Retreat, Inc.*, 671 A.2d 1249, 1256 (Vt. 1995). "[W]hether a jury could reasonably find that the conduct at issue meets this test[]" is a "threshold question" for "the court to determine[.]" *Dulude v. Fletcher Allen Health Care, Inc.*, 807 A.2d 390, 398 (Vt. 2002).

A law enforcement officer's gratuitous use of force may be extreme and outrageous if it "took place at a time when the officer[] either knew or reasonably should have known that [the] [p]laintiff was incapacitated." *Burwell*, 131 F. Supp. 3d at 300 (declining to find that defendant officers' conduct "did not 'reach the level of extreme outrage necessary'" as a matter of law). Although a close call, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude Officer Koch's alleged use of force to assist in taking her down to the floor while she was handcuffed behind her back and had been shoved and punched was "extreme," "outrageous," and "utterly intolerable." *Fromson*, 2004 VT 29, ¶ 14, 176 Vt. at 399, 848 A.2d at 347. Because disputed issues of material fact preclude summary judgment, Officer Koch's motion to dismiss Plaintiff's IIED claim is DENIED.

### 4.    Whether Officer Koch Is Entitled to Summary Judgment on Plaintiff's Gross Negligence Claim (Count V).

Officer Koch asserts Plaintiff's gross negligence claim must be dismissed as he had no duty of care and because his contact with Plaintiff was indisputably intentional.

Under Vermont law, "negligence has four elements: a legal duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a causal link between the breach and the injury." *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 26, 212 Vt. 612, 238 A.3d 608, 620. "[G]ross negligence is 'conduct which involve[s] a gross deviation from the care that a reasonable person would have exercised in that situation.'" *State v. Carlin*, 2010 VT 79, ¶ 6, 188 Vt. 602, 603, 9 A.3d 312, 314 (quoting 23 V.S.A.

§ 1091(b)(2)) (second alteration in original). It "amounts to a failure to exercise even a slight degree of care" and requires "more than an error of judgment, momentary inattention, or loss of presence of mind." *Rivard v. Roy*, 196 A.2d 497, 500 (Vt. 1963) (internal quotation marks omitted) (quoting *Emery v. Small*, 86 A.2d 542, 543 (Vt. 1952)). A plaintiff must prove the defendant "heedlessly and palpably violated a legal duty owed to plaintiff." *Amy's Enters.*, 817 A.2d at 616. "Whether an individual was grossly negligent is ordinarily a jury question, except where reasonable people cannot differ." *Kane v. Lamothe*, 2007 VT 91, ¶ 12, 182 Vt. 241, 248, 936 A.2d 1303, 1309. "Each case turns almost entirely on its own peculiar factual situation." *Langdon-Davies v. Stalbird*, 163 A.2d 873, 874-75 (Vt. 1960).

"Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure." *Behr v. Hook*, 787 A.2d 499, 504 (Vt. 2001) (internal quotation marks omitted) (quoting *Shaw v. Moore*, 162 A. 373, 374 (Vt. 1932)). To the extent Plaintiff argues Officer Koch intentionally applied downward pressure to throw her to the floor, he cannot "be negligent for failing to anticipate and prevent *his own* intentional conduct." *Espinet v. Horvath*, 657 A.2d 168, 169 (Vt. 1993) (emphasis in original).

Although Plaintiff asserts Officer Koch owed her a "duty of care as a citizen[,]" (Doc. 1 at 8, ¶ 46), because he was a police officer acting under color of state law, generally, "a person has no duty to control the conduct of a third person to prevent harm to another[.]" *Stocker v. State*, 2021 VT 71, ¶ 14, 215 Vt. 432, 442, 264 A.3d 435, 443. Notwithstanding the general rule, a duty to protect another from the actions of a third party may arise when a plaintiff's claim is "based on [the] violation of a statutory duty[,]" *id.* ¶ 15, 215 Vt. at 442, 264 A.3d at 443, or when a "special relationship" exists between the plaintiff and the defendant or the defendant and the third person. *Peck v. Counseling Serv. of Addison Cnty., Inc.*, 499 A.2d 422, 425 (Vt. 1985). A "special relationship" may arise and "impose a duty . . . to take affirmative actions or precautions for the aid or protection of another[]" when the plaintiff is in the defendant's custody. *Lenoci v.*

*Leonard*, 2011 VT 47, ¶ 15, 189 Vt. 641, 644, 21 A.3d 694, 699 (citing Restatement (Second) of Torts § 314A(4) (1965)) (second citation omitted).

"One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his [or her] normal opportunities for protection is under a similar duty to the other." Restatement (Second) of Torts § 314A(4) (1965); *see also id.* § 320 (stating person in custody of another "is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other" under certain circumstances). This duty arises because "when a detainee has been taken into custody and is, for example, handcuffed, he [or she] is unable to defend himself [or herself] from attack and is owed a duty of protection by his [or her] custodian." *Rudavsky v. City of S. Burlington*, 2018 WL 4639096, at *7 (D. Vt. Sept. 27, 2018). Because Plaintiff was handcuffed and detained by SAPD officers, including Officer Koch, Officer Koch owed her a duty of care to protect her from harm to the extent he knew or should have known he had "the ability to control the conduct of" Sergeant Lawton and "the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 320 (1965).

Plaintiff cannot establish a gross negligence claim against Officer Koch for Sergeant Lawton's shove and punch because he could not have reasonably intervened. To the extent Plaintiff's gross negligence claim against Officer Koch is based upon his failure to intervene to prevent Sergeant Lawton from taking her to the floor, disputed issues of fact preclude summary judgment on this issue. *See Meli v. City of Burlington*, 585 F. Supp. 3d 615, 637 (D. Vt. 2022), *appeal dismissed*, 2023 WL 5572582 (2d Cir. July 27, 2023) (denying motion for summary judgment on gross negligence claim where reasonableness of officer's actions was disputed). For the same reason, the court cannot conclude as a matter of law that Officer Koch is entitled to qualified immunity under Vermont law for that claim.

For the reasons stated above, the court therefore DENIES Officer Koch's motion for summary judgment on Plaintiff's gross negligence claim to the extent it pertains to

Officer Koch's failure to intervene in the takedown but GRANTS the motion as it pertains to his failure to intervene in Sergeant Lawton's shove and punch.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART the Officer Koch's motion for summary judgment. (Doc. 64.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of April, 2024.

Christina Reiss, District Judge
United States District Court